THEODORE C. CHEN, SBN 206647
Law Offices of Farshad Owji, P.A.
473 Jackson Street, Second Floor
San Francisco, California 94111
Telephone:     (415) 693-9583
Facsimile:     (415) 693-9584

Attorneys for Plaintiff
MAHSHID KIANFARD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAHSHID KIANFARD )<br><br>Plaintiff, )<br><br>vs. )<br><br>ALBERTO R. GONZALES, Attorney General of )<br>the United States, in his Official Capacity; )<br>ROBERT S. MUELLER, Director of FBI, in his )<br>Official Capacity; MICHAEL CHERTOFF, )<br>Secretary of Department of Homeland Security, in )<br>his Official Capacity; EMILIO T. GONZALEZ, )<br>Director of United States Citizenship and )<br>Immigration Services, in his Official Capacity; )<br>ROSEMARY MELVILLE, District Director of the )<br>San Francisco Citizenship and Immigration )<br>Services in her Official Capacity; )<br><br>Defendants. ) | No.:  C07-2904 WDB<br><br>DECLARATION OF<br>THEODORE  CHEN IN SUPPORT<br>OF PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>Judge:  Hon. Wayne D. Brazil<br>Date:   November 7, 2007<br>Time:   1:30 p.m. |

I, Theodore C. Chen, declare as follows:

1.     I am counsel for plaintiff in the above-entitled action on a petition for a writ of mandamus. I make this declaration based on personal knowledge, and if called to testify as a witness, I could and would testify competently to the truth of statements made in this declaration.

2.    I am an attorney duly licensed in the State of California, and am admitted to practice before the U.S. District Courts for the Northern, Eastern and Central Districts of California, as well before the U.S. Court of Appeals for the Ninth Circuit. My practice focuses almost exclusively on U.S. immigration and nationality law, including family-based immigrant visas, employment-based immigrant and nonimmigrant visas, naturalization and citizenship, asylum, removal defense, and federal litigation.

3.    Based on my review of plaintiff's immigration file, plaintiff Mahshid Kianfard appears prima facie eligible for adjustment of status under 8 U.S.C. § 1255(i), INA § 245(i). As amended by Section 1502(a)(1)(B) of Public Law 106-554, dated December 21, 2000 (LIFE Act Amendments of 2000), an alien who is physically present in the United States but entered without inspection may qualify for adjustment of status only if he or she (a) is the beneficiary of a petition for classification under the family-preference immigrant visa categories that was filed with the Attorney General on or before April 30, 2001; (b) was physically present in the United States on the date of the enactment of the a LIFE Act Amendments of 2000; and (c) remits an additional payment of $1,000 with the application.

4.    An alien who meets the above requirements is considered a "grandfathered alien" for purposes of 8 U.S.C. § 1255(i), INA § 245(i). *See* 8 CFR 245.10 (a)(1)(i). If physically present in the United States, a "grandfathered alien" may apply for adjustment of status not only based on the petition that qualifies the alien for "grandfathered" status, but also through another petition that provides an immediately available visa. In the case of the plaintiff, the I-130 petition filed by her lawful permanent resident mother on April 30, 2001 (Plaintiff's Declaration, at Exhibit C) is the family-preference petition that qualified her for grandfathered status, but she applied for adjustment of status based on the immediate-relative petition filed by her U.S. citizen spouse. She also has provided proof, in the form of a State of Georgia Driver's License issued on October 10, 2000, that she was physically present in the United States on December 21, 2000, the date of enactment of the Life Act Amendments. See Plaintiff's Declaration, at Exhibit B.

///

5.     Despite her status as a "grandfathered alien" under 8 U.S.C. § 1255(i), so long as the plaintiff's application for adjustment of status remains pending, she cannot travel abroad without serious consequences to her application.  The record shows that the plaintiff entered without inspection on September 1, 1999 and has accrued more than one year of unlawful presence prior to submission of her application for adjustment of status on January 18, 2005. Under 8 USC § 1182(a)(9)(B)(ii), any alien, other than a lawful permanent resident, who has been unlawfully present in the United States for a period of one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible.     If the plaintiff departs the United States prior to approval of her application for adjustment of status, even with an advanced parole document, she will be deemed inadmissible for a period of ten years, or for such time barred from readmission, adjustment of status, or an immigrant visa.

6.     According to USCIS public records, the average processing time for adjustment of status applications filed with or transferred to the San Francisco District Office is six months. A true and correct copy of the San Francisco Case Processing Dates posted on the USCIS internet website is attached hereto at Exhibit A.

7.     The plaintiff requires annual renewal of her employment authorization documents in order to maintain authorization for employment.   Since the time of filing her application for adjustment of status in 2005, the filing fees for virtually all USCIS benefits has risen significantly. On July 30, 2007, the filing fee for employment authorization increased from $180 to $340.    True and correct copies of USCIS public notices regarding fee increases on July 30, 2007 are attached hereto at Exhibit B.

8.     On June 11, 2007, the Citizenship and Immigration Services Ombudsman submitted to the U.S. Senate and U.S. House of Representatives Committees on the Judiciary his Annual Report on the performance of the USCIS between June 1, 2006 and May 30, 2007. A true and correct copy of excerpts of the USCIS Ombudsman's 2007 Annual Report ("2007 Annual Report") is attached hereto at Exhibit C.

9.    The 2007 Annual Report to Congress noted that the "problem of long-pending FBI name checks worsened during the reporting period." 2007 Annual Report at 37. This conclusion was supported by the following statistics: "[A]s of May 2007, USCIS reported a staggering 329,160 FBI name check cases pending, with approximately 64 percent (211,341) of those cases pending more than 90 days and approximately 32 percent (106,738) pending more than one year. While the percentages of long-pending cases compared to last year are similar, the absolute numbers have increased. There are now 93,358 more cases pending the name check than last year. Perhaps most disturbing, there are 31,144 FBI name check cases pending more than 33 months as compared to 21,570 last year – over a 44 percent increase in the number of cases pending more than 33 months." Id.

10.    The Ombudsman's 2007 Annual Report further calls into question the purpose of the FBI name checks.  "Name checks are not conducted by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI. Instead, the name checks are a fee-for-service that the FBI provides to USCIS and according to USCIS-defined standards."  2007 Annual Report at 38.

11.    The Ombudsman further reports that "[c]ompletion of the name check process may take considerable time because manual reviews of FBI files are sometimes required. This review may include FBI reporting on fragments of names of people who are not necessarily central or directly related to an investigation or law enforcement matter.  In discussions with the Ombudsman, the FBI stated that it lacks the resources to perform the function in a timely manner." 2007 Annual Report at 38-39.


I declare under the penalty of perjury that foregoing is true and correct.

Dated: 10/2/2007        _Theodore C. Chen_

                                            Theodore C. Chen

LIST OF EXHIBITS

Pages

EXHIBIT A    **USCIS San Francisco CA Processing Dates**    1-2
posted September 15, 2007 and downloaded from internet at
http://egov.uscis.gov on 9/30/2007


EXHIBIT B    **Public Records relating to USCIS Fee Increase:**

**"Press Release: USCIS Sets Final Fee Schedule to Build    3
an Immigration Service for the 21st Century"** (May 29, 2007).
downloaded from the internet:
http://www.uscis.gov/files/pressrelease/FinalFeeRuleQsAs052907.pdf

**New Fee Schedule** (Effective July 30, 2007) downloaded from internet at    4-5
http://www.uscis.gov/files/nativedocuments/FinalUSCISFeeSchedule052907.pdf


EXHIBIT C    **Excerpts** of **USCIS Ombudsman Annual Report 2007** (June 11, 2007)    6-24
downloaded from internet at
http://www.dhs.gov/xlibrary/assets/CISOMB_Annual%20Report_2007.pdf



Home   Contact Us   Site Map   FAQ

Search                          (GO)

Advanced Search

Services & Benefits   Immigration Forms   Laws & Regulations   About USCIS   Education & Resource   Press Room

Print This Page  |  Back

# U.S. Citizenship and Immigration Services
# San Francisco CA Processing Dates
# Posted September 15, 2007

**Notice**:  U.S. Citizenship and Immigration Services (USCIS) has improved the reporting procedure for processing times of immigration benefit applications.  In the past, USCIS benefit processing reports indicated the specific type of applications or petitions that were being processed and the date the cases were received.  However, the date the case was received did not provide a clear indication of when USCIS expected to complete the case, nor did it provide a clear indication of USCIS' commitment to process cases within a certain cycle time.  It also did not align with the processing times and cycle times the agency reports in other contexts.

This improved reporting procedure is an effort to give our customers more accurate information that better reflects current processing time and USCIS service level commitments. Effective immediately, when we are completing applications and petitions within our service level goals we will report the USCIS service level commitment. For example, when our service level goal is to process a particular kind of case within six months, and if our processing time is six months or less, we will show "6 months".

When we are not meeting our service level goal, the date posted will reflect the filing date of cases that are being completed.  It should be noted that while in some instances reported processing dates may appear to have regressed due to this change, they do not reflect a lengthening of USCIS processing times, but simply the change in reporting.  Our goal is to provide accurate projections and thus give customers clear expectations as to what they can expect as a processing time.

**There are several important exceptions to the processing times shown below:**

- Case processing will be delayed if we must ask you for more evidence or information.
  If we ask for missing required initial evidence, count the processing time from when we receive that missing evidence.
- The case processing timeframe will start over if a customer doesn't appear for an interview or asks that it be rescheduled.

**What if I have a problem or have questions about a case?**

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our fact sheet –

Case Services - How do I... know what kind of services are available to me after I file my application or petition?



01

One additional point about these projections. They are the time to complete processing and mail the actual notice and/or document. If you check case status online and see that your case has been approved, and you haven't yet received your approval notice or document in the mail, we ask that you wait thirty days from the approval date before contacting us. That is because it may take that long before it is returned to us as undeliverable. You can also print the case status online answer for your records.

District Office Processing Dates for **San Francisco CA** Posted September 15, 2007

| Form | Form Name | Processing Timeframe: |
|------|-----------|----------------------|
| I-131 | Application for Travel Documents | 3 Months |
| I-485 | Application to Register Permanent Residence or Adjust Status | 6 Months |
| I-600 | Petition to Classify Orphan as an Immediate Relative | May 13, 2007 |
| I-600A | Application for Advance Processing of Orphan Petition | May 13, 2007 |
| I-765 | Application for Employment Authorization | 11 Weeks |
| N-400 | Application for Naturalization | 7 Months |
| N-600 | Application for Certification of Citizenship | May 30, 2007 |

Print This Page    Back

**09-30-2007 07:23 PM EDT**

Home    Contact Us    Privacy Policy    Website Policies    NoFEAR    Freedom Of Information Act    FirstGov

U.S. Department of Homeland Security

**2**



*Office of Communications*

**U.S. Citizenship and Immigration Services**

May 29, 2007
(Revised, May 30, 2007)

# Press Release

**USCIS Sets Final Fee Schedule to Build an Immigration Service for the 21st Century**
*Public comments prompt reduction in fees for some families applying for adjustment of status, expands fee waiver and exemption eligibility, permits one free extension of approved orphan petitions*

WASHINGTON— Following a comprehensive review of more than 3,900 public comments, U.S. Citizenship and Immigration Services (USCIS) announced today a final fee structure that includes benefits for some families with children and also expands the availability of fee waivers and exemptions.

The rule, scheduled to be published in tomorrow's *Federal Register*, sets fees for the processing of immigration benefit applications and petitions and includes some substantive revisions from the proposal published in February of this year while providing necessary funding for the agency to continue strengthening the security and integrity of the immigration system, improving customer service, and modernizing business operations for the 21st century.

"We proposed our new fee structure with the expectation of ongoing discussions with the public on this important issue," said USCIS Director Emilio Gonzalez. "The volume and value of the comments we received has provided an opportunity to fine-tune our final fee structure that we believe is both fair to our customers and vital to our Nation as we continue to build a secure and efficient national immigration service."

Key revisions in the final rule include a 25 percent reduction to the proposed filing fee for Form I-485 (Adjustment of Status to Permanent Resident) for children younger than 14 years old, translating to a $360 decrease from what was proposed for a family of two adults and two children filing together. The rule will also allow a one-time free extension of approved orphan petitions for prospective adoptive parents, and expands the availability of fee waivers for some adjustment of status cases that arise from asylum or other humanitarian categories, and certain juvenile immigrants. USCIS will also exempt "Special Immigrant – Juveniles" from the $375 filing fee for Form I-360 (Petition for Amerasian, Widow(er), or Special Immigrant). Finally, USCIS will be able to waive the $80 biometric fee, in addition to the application/petition fee, on an individual basis.

The final rule retains the fee exemption for T visas (Victims of Human Trafficking) and self-petitioners seeking immigrant classification under the Violence Against Women Act (VAWA) for humanitarian reasons, as well as an exemption for all refugee and asylum applicants. The final rule also allows USCIS to waive the filing fee for U.S. citizens seeking immigrant status for their alien spouses (K-3 visas) and will continue to waive fees for members of the U.S. Armed Forces applying for naturalization.

USCIS expects that the revenue from the new fee structure will lead to a 20 percent reduction in average application processing times by the end of fiscal year 2009, and will cut processing times by the end of fiscal year 2008 for four key application types: the I-90 (Renew / Replace Permanent Resident Card), I-140 (Immigration Petition for Alien Worker), the I-485, and the N-400 (Naturalization). These four application types represent one-third of all applications filed.

The new fee structure is effective on July 30, 2007, and is posted at www.uscis.gov. Applications or petitions postmarked or otherwise filed on or after that date must include the new fee. More information on the final rule is available in the accompanying Questions and Answers document and a chart explaining the fee schedule for applications and petitions.

– USCIS –



# USCIS Fee Schedule                    **Effective: July 30, 2007**

USCIS fees change on July 30, 2007. This fee schedule applies if you file on or after that date. The fees listed below include both the filing fee and any required biometric fees.

| Form # | Purpose | Fee |
|---|---|---|
| **I 90** | **Renew or replace your Permanent Resident Card (green card)** | |
| | If filing to renew your card within 30 days of turning 14 | No fee |
| | All others where a fee is required: filing + biometric= | $ 370 |
| **I 102** | **Replace or receive an I-94 Nonimmigrant Arrival-Departure Record** | $ 320 |
| **I 129** | **Petition for Nonimmigrant Worker** | $ 320 |
| | **Note:** Petitions for H-1B, H2B and L-1 workers must also include the supplemental fees and fraud prevention fees described on the form. Those fee amounts are unchanged. | |
| **I 129F** | **Fiancée Petition** | |
| | General fiancée petition: | $ 455 |
| | For K-3 status based on an immigrant petition filed by the same U.S. citizen husband or wife: | No fee |
| **I 130** | **Relative Petition** | $ 355 |
| **I 131** | **Reentry permit, refugee travel document or advance parole** | |
| | Reentry permit or refugee travel document | $ 305 |
| | Advance Parole | $ 305 |
| **I 140** | **Petition for an Immigrant Worker** | $ 475 |
| **I 191** | **Permission to return to an unrelinquished domicile** | $ 545 |
| **I 192** | **Advance permission to enter as a Nonimmigrant** | $ 545 |
| **I 193** | **Waive passport and/or visa requirement to enter the U.S.** | $ 545 |
| **I 212** | **Permission to reapply for Admission to the U.S. after deportation or removal** | $ 545 |
| **I 290B** | **Appeal; Motion to Reopen or Reconsider** | $ 585 |
| **I 360** | **Petition for AmerAsian, Widow(er) of U.S.C. or Special Immigrant** | |
| | For AmerAsian | No fee |
| | Self-petitioning battered or abused spouse, parent or child of a U.S. citizen or Permanent Resident | No fee |
| | Special Immigrant Juvenile | No fee |
| | All others | $ 375 |
| **I 485** | **Adjust status and become a permanent resident while in the U.S.** | |
| | Applying based on your having been admitted to the U.S. as a refugee | No fee |
| | All other eligibility- | |
| | If under 14 and -    filing with the I-485 application of at least one parent: | $ 600 |
| |                        not filing with the I-485 application of at least one parent: | $ 930 |
| | If 79 or older | $ 930 |
| | All others: filing + biometric= | $ 1,010 |
| | **Note:** The penalty fee, where it applies, is in addition to the above fees, and is unchanged. | |
| **I 526** | **Investor Petition** | $ 1,435 |
| **I 539** | **Extend stay as Nonimmigrant or change Nonimmigrant status** | $ 300 |
| **I 589** | **Asylum** | No fee |
| **I 600A** | **Advance processing for Orphan Petition -**    $750 (filing + biometric) for you + $ 80 biometric fee for each person 18 or older living with you | |
| | **Note:** If you already have an approved I-600A that is about to expire, and have not yet filed your I-600 petition, you can receive one free extension of your I-600A by filing a new I-600A without fee before the first expires. | |
| **I 600** | **Orphan Petition**    If based on an approved I-600A | No fee |
| |                        Otherwise    $750 (filing + biometric) for you + $ 80 biometric fee for each person 18 or older living with you | |
| **I 601** | **Waive grounds of excludability** | $ 545 |
| **I 612** | **Waive foreign residence requirement** | $ 545 |
| **I-730** | **Refugee/Asylee Relative Petition** | No fee |
| **I 751** | **Remove conditions on your Permanent Resident status**    $ 545 (filing + biometric) for you + $80 biometric fee for each dependent you include in your application | |
| **I 765** | **Employment Authorization /Employment Authorization Document (EAD)** | $ 340 |
| **I 821** | **Temporary Protected Status (TPS) Program** | |
| | First time applicant    If under 14 and not applying for an EAD | $ 50 |
| |                            Otherwise: filing + biometric= | $ 130 |
| | Renewal or re-registration: biometric= | $ 80 |
| **I 824** | **Follow-up action on an approved application or petition** | $ 340 |

*Continued on Back...*

**4**

# USCIS Fee Schedule                                    Effective: July 30, 2007

| Form # | Purpose | | Fee |
|---|---|---|---|
| I 829 | Remove conditions on Permanent Resident status (investor) | $ 2,930 (filing + biometric) for you + $80 biometric fee for each dependent you include in your application | |
| I 881 | NACARA – suspension of deportation or special rule | | |
| | Filed with USCIS - A base filing fee of $ 285 per person, with a base fee family cap of $ 570 for applications filed together by a husband, wife and unmarried children. Each applicant must also pay an $ 80 biometric fee. | | |
| | Filed with the Immigration Court | | $ 165 |
| I 905 | Authorization for organization to issue certification to health care workers | | $ 230 |
| I 907 | Premium processing fee | | $ 1,000 |
| I 914 | For 'T' nonimmigrant status | | No fee |

## U.S. Citizenship

| Form # | Purpose | | Fee |
|---|---|---|---|
| N 300 | To file Declaration of Intent to apply for U.S. Citizenship | | $ 235 |
| N 336 | Request hearing on decision on naturalization application | | $ 605 |
| N 400 | Naturalization (to become a U.S. citizen) | Through service in the U.S. armed forces | No fee |
| | | All others: filing + biometric= | $ 675 |
| N 470 | Preserve residence for naturalization purposes | | $ 305 |
| N 565 | Replace Naturalization/Citizenship Certificate | | $ 380 |
| N 600 N 600K | Recognition of U.S. citizenship | for biological child | $ 460 |
| | | for adopted child | $ 420 |
| N 644 | Posthumous citizenship | | No fee |

## Programs under the 1986 Legalization and Special Agricultural Worker (SAW) Programs

| Form # | Purpose | | Fee |
|---|---|---|---|
| I 687 | Become a Temporary Resident: filing + biometric= | | $ 790 |
| I 690 | Waive grounds of Excludability | | $ 185 |
| I 694 | Appeal | | $ 545 |
| I 695 | Replace Temporary Resident Card or Employment Authorization Document: filing + biometric= | | $ 210 |
| I 698 | Temporary Resident's application for permanent resident status | | |
| | Filed within 31 months after granted temporary residence: filing + biometric= | | $ 1,450 |
| | Filed later: filing + biometric= | | $ 1,490 |
| I 817 | Status under Family Unity Program | If under 14 | $ 440 |
| | | All others: filing + biometric= | $ 520 |

Please be sure you include the correct fee. Cases with the wrong fee will be rejected. Your payment must be in U.S. dollars. Checks and money orders must be from U.S. institutions. Do not mail cash. Checks are accepted subject to collection. Make your check out to "Department of Homeland Security" except that:
- If you are filing an I-881 with the Immigration Court make your payment out to "Department of Justice".
- If you live in Guam, make your payment out to "Treasurer, Guam".
- If you live in the U.S. Virgin Islands, make your payment out to "Commissioner of Finance of the Virgin Islands".
Please spell the name out completely. Do not use initials, such as DHS. Filing and biometric fees cannot be refunded. We may use electronic check conversion for the payment process. Our returned check fee is $30.

**Fee waivers** – USCIS has already waived fees for certain kinds of cases and circumstances. In certain other instances an applicant or petitioner who believes that they are financially unable to pay that fee even though others must pay that fee can apply for a fee waiver. Waiver requests can only be considered for the following forms – I-90; I-751; I-765; I-817; N-300; N-400; N-470; N-565; N-600; N-600k; the I-485 if adjustment of status if based on asylum status, on 'T' or 'U' nonimmigrant status, on an approved self-petitioning battered or abused spouse, parent or child of a U.S. citizen or Permanent Resident, or to whom the public charge provisions do not apply; and the I-290B and N-336 appeals and motions for the above forms. For more information about how to apply, and how to prove eligibility for a waiver, see our website or call us at 1-800-375-5283.

**Copies of documents** – If you are applying to renew or replace a card or USCIS document, and the instructions say to include your current one when you apply, then you must submit your actual card or document. For all other applications and petitions you can submit legible photocopies of documents such as a Naturalization Certificate, birth certificate, marriage certificate, divorce decree or Permanent Resident Card. Any copy must be a complete copy of the front and back. As we process your case we may ask you for the original for verification.

**Adjustment applications and ancillary benefits** – The new application fee for an I-485 is a package fee that includes associated EAD and advance parole applications. Thus, if you file an I-485 with the fee listed above, while you will still need to submit applications for an EAD and advance parole, you will not need to pay a separate fee so long as your adjustment application is pending. However, if you filed your I-485 before this fee change, to apply for or renew your EAD or advance parole, you must file a new application with the new fee for those applications.

**5**



Citizenship and Immigration Services Ombudsman

# Annual Report 2007

**Submitted to:**

**United States Senate**
**Committee on the Judiciary**

**United States House of Representatives**
**Committee on the Judiciary**

**June 11, 2007**



**Homeland Security**

EXHIBIT C

6

The Honorable Patrick J. Leahy, Chairman
Committee on the Judiciary
United States Senate
Washington, D.C. 20510

The Honorable Arlen Specter, Ranking Member
Committee on the Judiciary
United States Senate
Washington, D.C. 20510

The Honorable John Conyers, Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, D.C. 20515

The Honorable Lamar Smith, Ranking Member
Committee on the Judiciary
U.S. House of Representatives
Washington, D.C. 20515

The Honorable Edward M. Kennedy, Chairman
Subcommittee on Immigration, Refugees, and Border Security
United States Senate
Washington, D.C. 20510

The Honorable John Cornyn, Ranking Member
Subcommittee on Immigration, Refugees, and Border Security
United States Senate
Washington, D.C. 20510

The Honorable Zoe Lofgren, Chairwoman
Subcommittee on Immigration, Citizenship, Refugees, Border Security,
and International Law
U.S. House of Representatives
Washington, D.C. 20515

The Honorable Peter King, Ranking Member
Subcommittee on Immigration, Citizenship, Refugees, Border Security,
and International Law
U.S. House of Representatives
Washington, D.C. 20515

7

## MESSAGE FROM THE OMBUDSMAN



The Citizenship and Immigration Services Ombudsman's 2007 Annual Report marks 46 months of cumulative analysis and recommendations since the establishment of the office. The Ombudsman's office is Congressionally-mandated to assist individuals and employers in resolving problems with the U.S. Citizenship and Immigration Services (USCIS) of the Department of Homeland Security (DHS) by advancing recommendations on improving USCIS services and operations. It is an independent DHS office that reports directly to the DHS Deputy Secretary with an annual report to Congress without prior review and comment by DHS or the executive branch, as directed by the Homeland Security Act of 2002.

The Ombudsman's first three annual reports focused on the systemic issues that caused delay in granting immigration benefits and customer service complaints. These reports identified pervasive and serious issues that were addressed in 28 formal recommendations directed at solving problems faced by individuals and employers in their interactions with USCIS. The USCIS Director and the Ombudsman generally agree on the identified problems and their need for priority attention, although the solutions proposed and those adopted by USCIS may differ.

Challenges still exist within USCIS. Customers continue to have difficulties with confusing forms and processes and many customers wait months, and perhaps years, for final adjudication of their cases. The Ombudsman will continue to assist individuals to receive lawful benefits in a timely, customer-friendly, secure, and efficient manner.

I want to thank DHS Secretary Michael Chertoff, Deputy Secretary Michael P. Jackson, former Secretary Tom Ridge, former Deputy Secretary Jim Loy, former Deputy Secretary Gordon England, USCIS Director Emilio Gonzalez, Deputy Director Jonathan "Jock" Scharfen, and former Director Eduardo Aguirre for their dedication to our mission of providing secure, efficient, and expeditious immigration services. I have been privileged to work with committed professionals in DHS, USCIS, and the Ombudsman's office.

The preparation of this annual report was accomplished by tireless efforts of a dedicated staff of professionals who spent many hundreds of hours reviewing and validating facts and figures, as well as drafting and editing the report. I thank them for assisting me in completing it and for their public service in addressing national security and customer service. I especially would like to thank Wendy Kamenshine who again this year skillfully managed this complicated project.

We have accomplished a great deal, but there is much more to do in the spirit of responsive government.

Prakash Khatri
Citizenship & Immigration Services Ombudsman

**8**

## EXECUTIVE SUMMARY

This report, submitted pursuant to the Homeland Security Act of 2002 § 452, provides details on activities undertaken by the Ombudsman from June 1, 2006 through May 31, 2007.

The statutory mission of the Ombudsman is to:

- Assist individuals and employers in resolving problems with USCIS;

- Identify areas in which individuals and employers have problems in dealing with USCIS; and

- Propose changes to mitigate identified problems.

During the reporting period, the Ombudsman continued to provide assistance to USCIS customers, identify problems, and recommend solutions to systemic problems confronting USCIS. These recommendations focused on improving customer service and transparency, while enhancing security and efficiency. Information boxes in the report provide readers with: (1) USCIS best practices; (2) additional recommendations; (3) observations from the Ombudsman's trips to USCIS facilities; (4) customer comments from the Ombudsman's pilot teleconference program; and (5) descriptions of actual case problems.

### USCIS Transformation

Transformation of USCIS -- which encompasses IT modernization efforts, forms revision, and other initiatives to provide USCIS with world-class digital processing capability -- is vital to the agency's future success. However, USCIS has devoted considerable resources to various types of transformation since the 1990s with minimal progress. The success of USCIS' transformation efforts requires focus, resources, and credible performance measures to assess outcomes.

### Pervasive and Serious Problems

Pervasive and serious problems faced by USCIS and its customers include:

**A.     Complexity of the Immigration Process** – One of the most serious problems facing individuals and employers is the complexity of the immigration process. While the Immigration and Nationality Act is the principal statute governing immigration to the United States, there are myriad other laws, regulations, policies, and procedures that affect whether and in what manner a foreign national may enter the United States, seek temporary status, a green card, or U.S. citizenship. Many of the pervasive and serious problems detailed in this report are interconnected and stem from the complexity and opaque nature of the immigration rules and the agency administering them.

**B.     Backlogs and Pending Cases** – USCIS customers continue to face lengthy and costly waiting periods for benefits, but thanks to the dedication and leadership of staff in

**9**

support centers, field offices, and service centers, there has been a substantial reduction in the backlog. Unfortunately, the agency's redefinition of the backlog obscures the issue and raises questions about its backlog reduction efforts.

**C.    Processing Times** – On August 23, 2006, USCIS announced changes that would improve the reporting methodology for processing times of immigration benefit applications. The Ombudsman disagrees that this change provides better information and urges USCIS to return to the practice of providing the public with the actual processing time for each field office.

**D.    Customer Service** – During the reporting period, USCIS made important strides in customer service. USCIS increased the number of appointments available via INFOPASS and began two new contracts in the effort to improve its toll-free customer service line. Nevertheless, the Ombudsman continued to observe other areas where communication issues with customers persist: (1) limited customer access to USCIS immigration officers who know about individual cases to resolve an inquiry accurately and efficiently; (2) questionable accuracy of information provided by customer service representatives; and (3) the practice of providing minimal information in response to customer inquiries.

**E.    Untimely Processing and Systemic Problems with Employment-Based Green Card Applications** – USCIS' inability to process enough green card applications and accurately track employment-based green card applications has resulted in a perpetual backlog of employment-based green card applications and widespread issuance of interim benefits. This lack of accurate data also has resulted in the underutilization of statutorily limited visa numbers.

**F.    Name Checks and Other Security Checks** – FBI name checks, one of the security screening tools used by USCIS, continue to significantly delay adjudication of immigration benefits for many customers, hinder backlog reduction efforts, and may not achieve their intended national security objectives. FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits, and the problem of long-pending FBI name check cases worsened during the reporting period.

**G.    Interim Benefits** – The Ombudsman strongly supports efforts by USCIS to eliminate the need for interim benefits in favor of timely, efficient, and secure adjudication of the ultimate immigration benefit. Legitimate customers should not have to pay filing fees for interim benefits they would not need if the underlying petition were timely processed. Interim benefits also allow ineligible and fraudulent applicants to receive work authorization and travel documents because of processing delays.

**H.    Funding of USCIS** – Due to the congressional requirement that USCIS be self-funded from fees, USCIS may make decisions that compromise operational efficiency to ensure revenue flow. The manner in which USCIS obtains its funding affects every facet of USCIS operations, including the ability to: (1) implement new program and

**10**

processing initiatives; (2) begin information technology and other transformation efforts; and (3) plan for the future.

**I.     Lack of Standardization Across USCIS Business Processes** – The Ombudsman is encouraged by USCIS' attempts to foster standardization of adjudicative processes and decision-making, yet processing times and the quality of decisions between offices remain inconsistent.

**J.     Inefficient or Redundant Processes** – There are certain USCIS processing inefficiencies and redundancies that could be easily addressed and would make substantial improvements for customers.

**K.     Coordination and Communication** – Coordination and communication problems between USCIS field offices and service centers, USCIS headquarters and field offices, USCIS and stakeholders and other government agencies, and even among headquarters components continue to cause processing delays, inconsistency in adjudications, and costly inefficiencies.

**L.     Information Technology Issues** – The effective deployment of information technology systems to all service centers and field offices remained a significant challenge for USCIS. Legacy agency systems are unable to communicate with one another, and USCIS continues to be a paper-based operation.

**M.     Staffing, Career Development, Training, and Strategic Workforce Planning and Recruiting** – During the reporting period, USCIS combined its human resources and training and career development components into a new office led by the agency's first Chief Human Capital Officer. USCIS completed its first strategic workforce planning and integrated training effort, which addressed aspects of the staffing and training gaps identified in the Ombudsman's 2006 Annual Report. Substantial workforce staffing and training challenges remain for USCIS. The Ombudsman urges USCIS to implement the findings of the Strategic Workforce Plan.

**N.     Delay in Updating U.S. Citizenship Designation in Records** – In the past, some naturalized citizens could not apply for passports because naturalization could not be verified. The Ombudsman understands that USCIS has corrected this problem and will continue to monitor it.

**O.     Green Cards Collected, Not Recorded, and Green Card Delivery Problems** – In the past, untimely and inaccurate updating of records resulted in major inconveniences for certain USCIS customers and misdirected green cards for others. The Ombudsman will monitor the changes USCIS has implemented and is planning on these issues.

**Up-front Processing**

The Ombudsman strongly supports up-front processing of immigration benefits applications to enhance national security, improve customer service, and increase USCIS

efficiency. Up-front processing changes current USCIS processing procedures by assuring that an agency official reviews and completes as many actionable items on a case as possible at the time USCIS accepts the application or petition. During the reporting period, USCIS expanded up-front processing programs to two additional small field offices. However, inadequate resources for transitioning to the new process and other circumstances have limited the success of the pilot programs at these two offices.

### Recommendations

This report includes summaries of the Ombudsman's formal recommendations for the 2007 reporting period, as well as those recommendations to which the Ombudsman received new USCIS responses. Recommendations during the reporting period focused on notice to customers and stakeholders, transparency in agency programs, and improving Freedom of Information Act operations.

### Ombudsman Outreach

During the reporting period, the Ombudsman traveled to over 40 USCIS facilities, met with countless stakeholder organizations, and held numerous in-person and telephonic meetings with interested parties. The Ombudsman urges USCIS to be a more transparent agency with better communication with its customers, and in this regard, the Ombudsman has sought to lead by example.

Key outreach initiatives include:

- **Teleconferences**. During the reporting period, the Ombudsman began a pilot teleconference series with customers and stakeholders to hear and address their comments and concerns on specific topics and regarding certain offices.

- **Trends Email**. The Ombudsman maintains an email account specifically for customers and stakeholders who have concerns about trends and systemic issues to suggest solutions. The majority of correspondence forwarded to the Ombudsman's trends email pertains to adjudications delays due to FBI name checks.

- **Virtual Ombudsman's Office**. As an alternative to local Ombudsman offices, for which there are no budget requests or allocations for FY 08, the Ombudsman is working with the relevant DHS components to develop a "Virtual Ombudsman's Office." The Ombudsman expects this program to be operational and make services of the Ombudsman more easily available to individuals and employers across the country via the internet by FY 08.

- **Ombudsman's Priorities**. The reporting period priorities, posted on the Ombudsman's website, were: (1) Recommending Solutions to Systemic Issues that Continue to Cause Individual Case Problems; (2) Expanding Up-Front Processing Programs; (3) Addressing USCIS Fundamental Budget Issues; (4)

Reviewing Processing Delays Caused by USCIS Security Screening; and (5) Improving USCIS Customer Service and Communications.

### Case Problems

By statute, the Ombudsman receives and processes case problems to assist individuals and employers who experience difficulties with USCIS. The case problem resolution unit also helps identify systemic issues for the Ombudsman to recommend solutions. During the reporting period, the Ombudsman and USCIS refined communication processes to improve case problem resolution capability.

### Looking Forward

In 2007-2008, the Ombudsman will continue to identify areas in which individuals and employers have problems interfacing with USCIS, and to the extent possible, propose changes to mitigate identified problems. The Ombudsman will gather information and feedback from USCIS customers and stakeholders by continuing to conduct frequent site visits to USCIS facilities; meeting regularly with community, employer, and immigration law organizations; and expanding individual and employer access to the Ombudsman.

The Ombudsman will improve the process for resolving problems individuals and employers face in dealing with USCIS by establishing a Virtual Ombudsman's Office to provide for online case problem submission. Additionally, the Ombudsman will continue to initiate and expand activities to promote interagency cooperation and holistic approaches to immigration issues.

13

## **Table of Contents**

Message From The Ombudsman ................................................................................................ ii

Executive Summary ................................................................................................................ iii

I.    Introduction ...................................................................................................................1

     A.    Mission ....................................................................................................................1

     B.    State of USCIS ........................................................................................................2

          1.    USCIS Budget and Funding ........................................................................ 2

          2.    Testing and Implementation of Innovative Approaches to Benefits Processing ............................................................................................... 3

          3.    Transparency in Adjudications Processing ................................................. 3

          4.    USCIS Relationship with the Ombudsman ................................................. 3

     C.    Accomplishments ....................................................................................................4

II.   USCIS Transformation ..................................................................................................5

III.  Pervasive and Serious Problems ...................................................................................7

     A.    Complexity of the Immigration Process ................................................................7

          1.    Background ................................................................................................. 7

          2.    USCIS Accountability ............................................................................... 8

          3.    Filing Requirements and Processes .......................................................... 9

     B.    Backlogs and Pending Cases ................................................................................11

          1.    Backlog Definition and Data .................................................................. 11

          2.    Adjudications of Backlogged Cases ....................................................... 14

          3.    Backlogged Form I-130 Petitions for Foreign National Relatives ........... 15

     C.    Processing Times ..................................................................................................17

     D.    Customer Service ..................................................................................................21

          1.    INFOPASS .............................................................................................. 23

          2.    National Customer Service Center ......................................................... 25

          3.    Case Status Online .................................................................................. 30

**14**

E.  Untimely Processing and Systemic Problems with Employment-Based
Green Card Applications.................................................................................32

1.  Background .................................................................................. 32

2.  Employment-Based Green Card Data Tracking and Ombudsman as
Interdepartmental Liaison .......................................................... 35

3.  Possible Solutions to Problems with Employment-Based Green Card
Processing ................................................................................... 36

F.  Name Checks and Other Security Checks ........................................................37

1.  Background .................................................................................. 37

2.  Impact of Long-Pending FBI Name Checks on USCIS Customers ......... 39

3.  Value of the FBI Name Checks ................................................... 40

4.  Possible Solutions to the FBI Name Check Delays .................... 41

G.  Interim Benefits .............................................................................................45

1.  Background .................................................................................. 45

2.  Thousands of Ineligible Green Card Applicants Continue to Receive
EADs........................................................................................... 46

H.  Funding of USCIS...........................................................................................46

1.  USCIS Sets New Fees for Petitions and Applications.............................. 47

2.  Premium Processing.................................................................... 49

3.  The Ombudsman Urges Consideration of a Revolving Trust to Fund
USCIS ......................................................................................... 51

I.  Lack of Standardization Across USCIS Business Processes...................................51

J.  Inefficient or Redundant Processes.......................................................................54

1.  Need for Improved Form Instructions and USCIS Intake Processes........ 55

2.  Multiple Filings for Foreign Spouses of U.S. Citizens............................. 56

3.  Application Support Centers and Fingerprinting of Applicants ............... 57

4.  Initial Case Screening and Widespread Issuance of Requests for
Additional Evidence.................................................................... 58

K.  Coordination and Communication .........................................................................61

1.  Field Offices/Service Centers ................................................... 61

2.  USCIS Headquarters/Field Office Coordination ....................... 62

**15**

were approved. This process would ensure that USCIS does not accept more applications than the number of visas available.

Another issue with priority dates and workloads is connected to the new fee rule. The Ombudsman anticipates that when the new fee rule goes into effect in July, delays in adjudication will significantly impact the agency if it does not track visa information, including visa classifications, priority dates, and country of chargeability. Without tallying cases receipted by visa category, USCIS inevitably will accept ineligible applications and more applications than it can process in the given timeframe. The agency will not collect fees for interim benefits issued for new green card applicants, as the new fee rule requires only one payment for both. In addition, there may be large numbers of retrogressed cases and, eventually, multiple issuances of interim benefits.

As described in the Ombudsman's 2006 Annual Report (at pp. 13-16), the Ombudsman continues to be concerned about USCIS' data integrity and failure to meet its obligation to maintain an accurate count of pending employment- and family-based preference applications. Although the focus is on employment-based visa applications, similar concerns exist for family-based preference cases. The continued collaboration of these agencies supports the Ombudsman's vision of cooperation to provide benefits in a timely and efficient manner.

### F.    Name Checks and Other Security Checks

FBI name checks, one of several security screening tools used by USCIS, continue to significantly delay adjudication of immigration benefits for many customers, hinder backlog reductions efforts, and may not achieve their intended national security objectives. FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits. The problem of long-pending FBI name check cases <u>worsened</u> during the reporting period.

#### 1.    Background

As of May 2007, USCIS reported a staggering 329,160 FBI name check cases pending, with approximately 64 percent (211,341) of those cases pending more than 90 days and approximately 32 percent (106,738) pending more than one year.[40] While the percentages of long-pending cases compared to last year are similar, the absolute numbers have increased. There are now 93,358 more cases pending the name check than last year. Perhaps most disturbing, there are 31,144 FBI name check cases pending more than 33 months as compared to 21,570 last year – over a 44 percent increase in the number of cases pending more than 33 months.[41]

---

[40] *See* USCIS FBI Pending Name Check Aging Report (May 4, 2007). It is important to note that USCIS does not include within its backlog cases pending due to FBI name checks. There are 155,592 FBI name check cases pending more than six months that otherwise may be part of USCIS' backlog. See section III.B for a discussion of USCIS backlogs.

[41] *See id.*

Figure 10:  Pending FBI Name Checks

| Age of Pending Response | Total Count (May 4, 2007) | Total Count (May 17, 2006) |
|---|---|---|
| < 3 months | 117,819 | 82,636 |
| 3 - 6 months | 55,749 | 33,450 |
| 6 - 9 months | 28,029 | 20,047 |
| 9 - 12 months | 20,825 | 16,845 |
| 12 - 15 months | 14,133 | 15,064 |
| 15 - 18 months | 13,931 | 10,636 |
| 18 - 21 months | 11,035 | 8,144 |
| 21 - 24 months | 12,398 | 8,325 |
| 24 - 27 months | 11,765 | 9,754 |
| 27 - 30 months | 6,600 | 4,435 |
| 30 - 33 months | 5,732 | 4,896 |
| > 33 months | 31,144 | 21,570 |
| **Total Pending** | **329,160** | **235,802** |

During the reporting period, processing delays due to FBI name checks were an issue in approximately 25 percent of all written case problems received by the Ombudsman. Resolving the FBI name check issue is included in the Ombudsman's top five priorities posted on the office website.[42] Unlike FBI name checks, other types of background and security checks – *e.g.*, fingerprint checks, the Interagency Border Inspection Systems name checks (IBIS), and the Automated Biometric Identification System (IDENT) checks – return results within a few days, if not a few minutes. These law enforcement and watch list checks do not significantly prolong USCIS processing times or contribute to the USCIS backlog.

As described in the Ombudsman's 2006 Annual Report (at p. 24), the FBI provides information to USCIS regarding anyone who is the principal subject of an investigation or is a person referenced in a file. USCIS adjudicators and the Fraud Detection and National Security (FDNS) unit use this information to determine if applicants are ineligible for benefits. The FBI provides the name check results at USCIS' request. Name checks are not conducted by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI. Instead, the name checks are a fee-for-service that the FBI provides to USCIS and according to USCIS-defined standards.

Once USCIS forwards records to the FBI for name checks, the process and the turnaround time for the checks are outside of USCIS' control. Completion of the name check process may take considerable time because manual reviews of FBI files are sometimes required. This review may include FBI reporting on fragments of names of people who are not necessarily central or directly related to an investigation or law enforcement matter. In discussions with the

---

[42] *See* section VI.F.

**17**

Ombudsman, the FBI has stated that it lacks the resources to perform the function in a timely manner.

### 2.    Impact of Long-Pending FBI Name Checks on USCIS Customers

The delay caused by the FBI name check has substantial consequences to applicants and their families, as well as to our country and the economy. Examples of how legitimate applicants suffer include:

- Loss of employment and employment opportunities where the position requires green card status or U.S. citizenship;

- Possible termination of employment due to the inability to comply with required Form I-9 employment verification procedures where USCIS delays interim EAD issuance;

- Difficulties obtaining drivers' licenses;

- Inability to qualify for certain federal grants and funds;

- Limitations on the ability to purchase property;

- Difficulties obtaining credit and student loans; and

- Disqualification from in-state tuition.

> *CASE PROBLEM*
>
> *The applicant's green card application has been pending since early 2005 due to the FBI name check. The applicant is a valued researcher at a U.S. pharmaceutical company.*

> *CASE PROBLEM*
>
> *The applicant's green card application has been pending with USCIS for approximately four years due to the FBI name check. The applicant is a researcher at a U.S. university and, because of the adjudication delay, the university and the individual have been disadvantaged in seeking grant proposals and funding. Specifically, the individual reports that he is currently working on federal research projects. The applicant's inability to advance critical work for the project is a serious impediment to the university, its competitiveness, and the applicant's professional advancement.*

---

*CASE PROBLEM*

*In fall 2003, an applicant filed a green card application, which remained pending due to FBI name checks until spring 2007. During the course of the adjudication, the applicant was fingerprinted and applied for interim benefits several times. Although the applicant applied for most of the interim benefits in a timely manner, the filing of the last EAD was not timely, and the applicant had to end his employment. In correspondence to the Ombudsman in the winter of 2007, the applicant related that he is a cancer patient who no longer has income necessary to pay for treatments.*

---

In February 2007, USCIS made public the criteria for expedited treatment of FBI name checks. While this change should help with specific cases, the *status quo* for FBI name check completion is unacceptable from the standpoint of national security and immigration benefits processing.

### 3.    Value of the FBI Name Checks

The challenge for USCIS (and perhaps the challenge for DHS and the entire federal government) is to evaluate the value of maintaining the current FBI name check process relative to considerations of threat, vulnerability, and consequence. The Ombudsman agrees with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction.

The Ombudsman recommended in the 2006 Annual Report (at p. 25) that the FBI name check process be re-examined. Delays in the name check process actually prolong an individual's presence in the United States while the check is pending. In this sense, the current USCIS name check policy may increase the risk to national security by extending the time a potential criminal or terrorist remains in the country.

In its 2006 Annual Report Response (at p. 10), USCIS stated:

> Although these security checks may require a more lengthy processing time, USCIS believes that performing them is essential to identifying national security and public safety concerns that would not have been uncovered by other means . . . in, a few cases, the information obtained from the FBI through this process has reflected very significant issues and risks. FBI name checks disclose information to USCIS that is otherwise not available. Information contained in 39 [percent] of the FBI positive responses (letterhead memoranda) received in FY 06 was not contained in IBIS/TECS, USCIS' primary background check tool. . .. [A]lthough a heavy price is paid in inquiries, mandamus actions, and other forms of litigation, USCIS is committed to effective

**19**

background checks, and thus is committed to the FBI name check. In fact, under the new fee rule currently under review, USCIS proposes to dedicate more funds to the FBI name check process as the FBI has indicated the fees they charge for these checks will increase and additional staff will be added to the process. This should help to speed up the name check process and reduce the backlog significantly.

Use of the 39 percent positive response rate as referenced by USCIS to justify continuing this program may exaggerate the value of the FBI name check. It is unclear how many of the FBI name check "responses" also were revealed by one or more of the other security checks conducted for the applications. To date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the FBI name check. The Ombudsman understands that most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other more efficient, automated criminal and security checks that USCIS initiates.

---

*COMMENTS FROM OMBUDSMAN'S TELECONFERENCE*

*One caller mentioned that USCIS does not schedule applicants for interviews because security clearances are not yet completed. He suggested that USCIS needs to look at the cost-benefit of doing these clearances. The caller stated he is in the military and has a top secret clearance.*

*Another caller suggested that information could be sent every "X" number of months to the applicant or attorney that the application still is held up for pending name checks, which would avert the many update requests.*

---

### 4.    Possible Solutions to the FBI Name Check Delays

During this and previous reporting periods, the Ombudsman had numerous meetings with USCIS leadership on FBI name checks and discussed a number of solutions to the name check logjam.

#### a.    Pre-Application Security Checks

A possible solution to the name check problem is pre-application security checks. USCIS has not chosen to implement such a process, which would dramatically impact the agency's revenue stream for a short period of time. Simultaneously, USCIS is failing to make basic changes to its processing methodology to reduce fraud and ineligible applicants. Instead, USCIS continues to substantially fund a process with questionable value. USCIS maintains that the name check process is of value, but it remains unclear whether the process has added any additional value over the security processes already in place.

Figure 11: Ombudsman's Suggested Pre-Application Security Check Process



1. May be performed in the United States or abroad.
2. Can include individuals applying for nonimmigrant visas or changes of status, individuals applying for immigrant status (adjustment or consular process), refugees, and naturalization applicants.
3. DHS/USCIS will collect and share data through an integrated case (person-based) management system. A component of this system will be an immigration case management system.

**21**

Figure 11 outlines the security screening steps to clear an applicant prior to interview, where necessary, and for adjudication of the immigration benefits application. The applicant/petitioner would register intent and pay a fee to cover the costs of the process. Pre-application is more than a pre-screening that determines *prima facie* eligibility. It moves the case to an adjudicating officer who reviews the file and interviews the applicant, if necessary. Since all fingerprints, biometrics, security clearances, necessary documents, medical evaluation, financial support, and visa availability are cleared, the applicant can be processed to conclusion immediately after interview. A Clearance Report is documentary proof that the applicant successfully completed the pre-application process. This process would place biometrics capture and security screening in the hands of appropriate law enforcement/contract employees, trained in the pre-screening process, and the determination of eligibility for benefits in the hands of USCIS officers trained in immigration law.

The agency also should review the DHS resources available to assist in exploring options to solve the backlogged FBI name check process. A number of DHS law enforcement entities perform security checks similar to those performed by USCIS.

### b.    USCIS Background Check Service IT System for Tracking FBI Name Check Cases

USCIS' 2006 Annual Report Response (at p. 10)indicates that the agency's planned Background Check Service (BCS), a new IT system that will track the status of background and security checks for pending cases, was to be implemented in late April with deployment beginning in May 2007. As of this writing, the BCS is not yet deployed. Currently, USCIS has limited capability to produce reports detailing the status of long-pending FBI name check cases. In addition, USCIS systems do not automatically indicate when a delayed name check is complete and the case can be adjudicated. Often, this leads to a situation where the validity of other checks expire before USCIS reviews the case. Those other checks then need to be reinitiated, adding financial and time costs for applicants and USCIS. The Ombudsman fully supports the expeditious rollout of the BCS system.

### c.    A Risk-Based Approach to FBI Name Checks

Name checks do not differentiate whether the individual has been in the United States for many years or a few days, is from and/or has traveled frequently to a country designated as a State Sponsor of Terrorism, or is a member of the U.S. military. Many individuals subject to lengthy name checks are either already green card holders or have been issued Employment Authorization Documents (EADs). These documents allow them to receive Social Security cards and state drivers' licenses. Most green card applicants are also eligible to receive advance parole enabling them to travel outside the United States and return as long as their cases are pending, which can be for many years under the current process.

---

**CASE PROBLEM**

*In early 2006, the applicant applied for naturalization. USCIS informed the applicant that the application is pending due to the FBI name check. The applicant currently is a contract employee for a federal agency and was security screened prior to beginning that employment.*

---

**CASE PROBLEM**

*The applicant's green card application was filed in early 2004. The application remains pending due to the FBI name check. The applicant previously served as a security officer at a U.S. embassy and was subject to rigorous security screening for the position.*

---

In November 2006, Secretary Chertoff discussed a risk-based approach to homeland security threats, vulnerabilities, and consequences:

> [T]he core principle that animates what we do at DHS . . . is risk management. It is a recognition of the fact that management of risk is not elimination of risk. There is no elimination of risk in life, and anybody who promises every single person protection against every threat at every moment in every place in the country is making a false promise . . .. What we do have to do is identify and prioritize risks -- understanding the threat, the vulnerability and the consequence. And then we have to apply our resources in a cost-effective manner, using discipline and common sense in order to minimize the risk without imposing undue cost on our communities and our families.[43]

Despite Secretary Chertoff's continuing emphasis on risk management, USCIS performs FBI name checks without the benefit of risk management modeling. In recent visits to USCIS field offices, a number of leaders have questioned the usefulness of the FBI name checks citing some of the same concerns discussed here. The process is not working and consideration should be given to re-engineering it to include a risk-based approach to immigration screening and national security. The U.S. Government Accountability Office recently noted in a report that "[w]hile the Secretary of DHS has expressed a commitment to risk management, DHS has not

---

[43] DHS Secretary Michael Chertoff, Prepared Remarks at the 2006 Grants & Training National Conference, Washington, D.C. (Nov. 28, 2006); http://www.dhs.gov/xnews/speeches/sp_1164738645429.shtm (last visited June 3, 2007).

---

**23**

performed comprehensive risk assessments in . . . immigration and customs systems to guide resource allocation decisions."[44]

Every effort should be undertaken to identify and remove persons who pose threats to the United States, which would include rescinding immigration benefits after USCIS has granted them. It would be irresponsible for law enforcement entities to stop their investigation of a potential crime merely because the person who is the subject of their investigation has obtained a green card or U.S. citizenship. Similarly, it would be illogical to think that delaying issuance of a green card or U.S. citizenship will prevent a criminal from committing a crime. Considering the protection the FBI name check provides, the cost of government resources used, and mental and actual hardships to applicants and their families, USCIS should reassess the continuation of its policy to require FBI name checks in their current form.

> *RECOMMENDATION AR 2007 -- 06*
>
> *In addition to the Ombudsman's recommendation in the 2006 Annual Report, AR 2006 –04, the Ombudsman recommends that USCIS: (1) evaluate the value of the name check in its current format and establish a risk-based approach to screening for national security concerns; (2) work with the FBI to provide the necessary resources to perform name checks in a timely manner; and (3) provide greater transparency to customers by publishing monthly the number of long-pending FBI name check cases.*

## G.    Interim Benefits

The Ombudsman strongly supports efforts by USCIS to eliminate the need for interim benefits in favor of timely, efficient, and secure adjudication of the ultimate immigration benefit.

### 1.    Background

Generally, USCIS issues interim benefits – EADs and advance parole documents (international travel documents) – to individuals who have green card applications pending with the agency for over 90 days.[45] The Ombudsman is encouraged by constructive dialogue with USCIS during the reporting period that addresses funding and security issues related to the processing of interim benefits.

On May 30, 2007, USCIS established new filing fees for immigration benefits.[46] Under the new fee schedule, USCIS will charge a single fee for green card applications to include recovery of the processing costs for interim benefits. The Ombudsman supports this approach to

---

[44] U.S. Government Accountability Office Report "Homeland Security: Management and Programmatic Challenges Facing the Department of Homeland Security," GAO-07-398T at 2 (Feb. 2007); http://www.gao.gov/new.items/d07398t.pdf (last visited June 6, 2007).

[45] *See* 8 C.F.R. § 274a.13(d).

[46] *See* "Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule," 72 Fed. Reg. 29,851 (May 30, 2007); *see also* section III.H.1.

24