THEODORE C. CHEN, SBN 206647
Law Offices of Farshad Owji, P.A.
473 Jackson Street, Second Floor
San Francisco, California 94111
Telephone:    (415) 693-9583
Facsimile:    (415) 693-9584

Attorneys for Plaintiff
MAHSHID KIANFARD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAHSHID KIANFARD ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> ) <br> ALBERTO R. GONZALES, Attorney General of ) <br> the United States, in his Official Capacity; ) <br> ROBERT S. MUELLER, Director of FBI, in his ) <br> Official Capacity; MICHAEL CHERTOFF, ) <br> Secretary of Department of Homeland Security, in ) <br> his Official Capacity; EMILIO T. GONZALEZ, ) <br> Director of United States Citizenship and ) <br> Immigration Services, in his Official Capacity; ) <br> ROSEMARY MELVILLE, District Director of the ) <br> San Francisco Citizenship and Immigration ) <br> Services in her Official Capacity; ) <br> ) <br> Defendants. ) | No.:   C07-2904 WDB <br><br> **CROSS-OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Hon. Wayne D. Brazil <br> Date:   November 7, 2007 <br> Time:   1:30 p.m. |

While Defendants concede in their motion for summary judgment that Defendants Chertoff, Gonzalez and Melville of the Department of Homeland Security and the USCIS have primary responsibility over adjudication of Plaintiff's application for adjustment of status, they also seek

dismissal of Defendants Peter Keisler and Robert Mueller, in their official capacities on behalf of the U.S. Department of Justice and the Federal Bureau of Investigation (FBI), arguing that the Attorney General and FBI possess neither a statutory nor non-discretionary duty to conduct security, background and/or name checks of alien applicants for visas, immigration benefits and admission to the United States (including adjustment of status).

Plaintiff concedes that the FBI's involvement in the actual adjudication of I-485 adjustment of status applications is ancillary and confined to the performance of background checks for the USCIS—duties or functions partly arising by contract with the DHS and USCIS. However, the FBI's contractual obligation to perform the name check for the DHS and USCIS is assumed pursuant to both statutory and executive mandate.

The common-law writ of mandamus provides a remedy only if the plaintiff has exhausted all other avenues of relief and only if the defendant owes the plaintiff a clear and non-discretionary duty. 28 U.S.C. § 1361 "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).

The Administrative Procedures Act (APA) authorizes suit by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004); 5 U.S.C. § 702   Agency action is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.*" *Norton,* 542 U.S. at 62 (emphasis in original)   A "failure to act" must be limited to a discrete agency action that is legally required. *Id.*   Where these elements are met, a Court may compel the agency to perform an action "unlawfully withheld" or "unreasonably delayed"  5 U.S.C. §706(1).

On May 14, 2002, the President signed into law H.R. 3525, otherwise known as the *Enhanced Border Security and Visa Entry Reform Act of 2002*. See Pub. L. 107-173   Among

the many provisions aimed at protecting the United States from further terrorist attacks were various directives to the President and other executive agencies to establish more stringent protocols for the screening and tracking of all visa and admission applicants to the United States. In addition to requiring machine-readable passports, pre-flight provision of passenger manifests, and development of systems to track foreign students and exchange visitors present in the United States, this law required the development of information-sharing capabilities between law enforcement agencies and those agencies directly involved in visa issuance (State Department) adjudication of immigration benefits, and immigration customs and border enforcement and protection (functions then collectively performed by the INS, now by the DHS).

Under Section 201(c) of the *Enhanced Border Security and Visa Entry Reform Act* of 2002, Congress required the establishment of the following interim measures for access to and coordination of law enforcement and other information for homeland and border security agencies:

> a. Requires law enforcement and intelligence agencies to make a maximum effort to share information relevant to admissibility and deportability of aliens with State and USCIS pending development of a comprehensive data share plan required by this act.
>
> b. Requires, no later than September 11, 2002, that the President identify to the Congress the information required from the law enforcement and intelligence communities for use by State and USCIS to screen applicants for admission.
>
> c. Requires within one year of passage the development and implementation of a plan for Federal law enforcement agencies and the intelligence community to provide the Department and the USCIS with such information. The plan must have adequate safeguards for the security of the information and for the protection of the confidentiality of informants.

Pub. L. 107-173

Section 202(b)(3) of the Enhanced Border Security and Visa Entry Reform Act of 2002 further required that the "Secretary of State and the Attorney General shall jointly prescribe procedures to ensure that consular and immigration officers can, as required, obtain assistance in resolving identity and other questions that may arise about the names of aliens seeking visas or

admission to the United States that may be subject to variations in format, transliteration, or other similar phenomenon."

Thus, under the Enhanced Border Security and Visa Entry Reform Act of 2002, establishment of a "name check" protocol was statutorily mandated as a law enforcement function r**equired** of the Attorney General in performance of his duty to facilitate the collection and sharing of law enforcement information and other data with the Department of State and the USCIS specifically in performance of their functions of adjudicating all visa and other immigration applications by foreign nationals and non-citizens seeking entry, admission, lawful permanent residence, or citizenship in the United States.   The Attorney General, has in turn, delegated the **discrete** name check function for visa and immigration applications to the FBI.[1]

Accordingly, while the Attorney General's duty to establish name check protocols, procedures, and technology systems may concededly not be clear and discrete under the Enhanced Border Security and Visa Entry Reform Act of 2002, the FBI's duty to perform the discrete name check function is non-discretionary and clearly ministerial.

Defendants, in their opposition to Plaintiff's motion for summary judgment, repeatedly emphasize the "national security" significance of the FBI name checks, even as they seek to absolve the Attorney General and the FBI of any non-discretionary duty to perform these name checks for USCIS in adjudicating the Plaintiff's application for adjustment of status.

Defendants Chertoff and agency officials of the USCIS, on the other hand, justify the two-and-a-half year delay in the adjudication of the plaintiff's application for permanent residence by claiming that they have no ability to control the time required for the name check procedure performed by the FBI, alternatively suggesting, without any specificity, that name

---

[1] The FBI's National Name Check Program (NNCP) has its genesis in Executive Order 10450, issued during the Eisenhower Administration, addressing federal personnel security issues, and mandated National Agency Checks (NACs) as part of the pre-employment vetting and background investigation process.  Since the passage of Enhanced Border Security and Visa Entry Reform Act in 2002 and other implementing regulations by various executive agencies, the FBI's name check function falls under various sub-divisions within the FBI's National Security Branch.

checks may be delayed because of derogatory information implicating national security or public safety (Declaration of Ronald Nelson, ¶¶ 4, 13), or because the name check procedure is complex (Declaration of Ronald Nelson, ¶4 and Fact Sheet at 2), or because of the large volume of applications received by USCIS, or the backlog of over 340,000 pending name check matters, or the limited resources of the FBI, or a combination of all of them. See Eldeeb v. Chertoff, No. 07cv236-T-17EAJ, 2007 WL 2209231 at *2 (M.D. Fla. July 30, 2007).

In determining whether the Defendants have unreasonably delayed in the adjudication of the Plaintiff's application for adjustment of status, Courts must balance various factors and consider each case individually based on the facts presented:

> (1) the time agencies take to make the decision must be governed by a "rule of reason" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority, (5) the court should also take into account the nature and extent of the interests prejudiced by the delay, and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001) (balancing TRAC factors to determine whether agency unreasonably delayed); *Liu v. Chertoff*, 2007 U.S. Dist. LEXIS 61772, *14 (E.D. Cal. August 22, 2007).

Plaintiff recognizes that there may be legitimate national security and public safety concerns requiring an FBI name check prior to final adjudication of a visa or immigration benefit. Nor does she ascribe any impropriety to Defendants in their delay of her case. At the very least, the evidence submitted by both parties in their respective motions for summary judgment indicate that the FBI, at the very least, lacks the resources to perform the huge volume of current, pending and backlogged name checks, with a backlog of over 329,160 FBI name check cases pending (See Declaration of Theodore Chen, Exhibit C, USCIS Ombudsman 2007 Report at 37.) But just when will the FBI have the resources to perform the name check

function required by the legitimate national security and public safety interests? The name check backlog increases exponentially every year. Id. Just this summer, filing fees for applications for adjustment of status, employment authorization, and other applications have increased more than two-fold, and the Department of Homeland Security and the USCIS partly justifies the increased fess by asserting that significant funds will be devoted to deal with security and name check delays in immigration applications. See Declaration of Theodore Chen, Exhibit B, USCIS Press Release. However, to the extent that Defendants attribute the delay to the volume of applications received, or the lack of resources, the Court should reject this explanation because, to hold otherwise, would inequitably shift the costs of an over-taxed system onto Plaintiffs and hundreds of thousands of others similarly situated to her. See *Liu v. Chertoff*, 2007 U.S. Dist. LEXIS 61772, *18.

Defendants have made general assertions regarding the delay, but they have failed to point to any specific evidence suggesting that: (1) the delay is attributable to Plaintiffs; or (2) Plaintiffs' applications are particularly complex; or (3) higher priorities exist necessitating the slow progress in Plaintiffs' case. Moreover, Defendants have not pointed to a single action taken to expedite the processing of the FBI name check or to any particularized evidence explaining why Plaintiffs' applications require an extended delay of more than two-and-a-half years, far beyond the 180 days recommended by Congress.

Defendants, for instance, have not presented any evidence showing that the FBI name check revealed a match or some other positive (derogatory) information. Nor have Defendants shown that this case involves a time-consuming and labor-intensive investigation, or that it involves complex, highly sensitive information precluding a quick resolution. Instead, Defendants have simply made general assertions about the delay.

Additionally, to the extent that Defendants invoke national security as a reason for the adjudication and/or name check delay, the court should reject this explanation given the length of the delay and the fact that the Plaintiff has been living and working as a registered nurse in the United States during the pendency of her application. See *Yong Tang v. Chertoff*, 493

1 F.Supp.2d 148, (D. Mass. June 26, 2007).   Mere invocation of national security, without a
2 particular explanation of how it caused delay, is insufficient to justify delay. See *Konchitsky v.*
3 *Chertoff*, 2007 WL 2070325 at *5 (N.D. Cal. July 13, 2007)
4     Finally, the human costs of the delay in the adjudication of the application for adjustment
5 of status on the Plaintiff Mahshid Kianfard should be considered.   Since the time her application
6 for adjustment of status was filed in January 2005, she and her U.S.-citizen spouse have
7 conceived and given birth to a child, now over 18-months old but she was unable to travel
8 abroad to attend her funeral lest she jeopardize her eligibility for adjustment of status.
9 (Plaintiff's Declaration at 5).

                      Respectfully Submitted,

                      /s/

Dated: October 25, 2007          _____
                      THEODORE C. CHEN
                      Attorney for Plaintiff